STATE OF NORTH DAKOTA EX REL. CHARLES M. KIST-LER, Respondent, v. CITY OF HANKINSON, a Municipal Corporation, et al., Appellants.

(205 N. W. 995.)

**Municipal corporations — city has power to sell its warrants for cash at par and credit amount received to proper fund and use same to pay for public improvements.**

1. Under § 3711 of the Compiled Laws for 1913, a city has power to sell special improvement warrants for cash at no less than the par value thereof,

---

Note.—(8) Mandamus refused where claim sought to be enforced against municipality doubtful, see 18 R. C. L. 220; 5 R. C. L. Supp. 976.

to credit the proceeds to the proper special assessment fund and use the same in paying for public improvements. In the instant case, under the facts stated, it is held that the improvement warrants were not sold for cash.

**Municipal corporations — crediting city on books of purchaser of improvement warrants held not sale for cash.**

2. Where the purported purchaser of municipal improvement warrants is shown to be a foreign corporation which, upon taking the warrants, credited the municipality upon its books with the understanding that the money was to be withdrawn in payment of estimates due the contractor, the placing of such credit does not amount to a sale for cash, within § 3711 of the Compiled Laws for 1913.

**Municipal corporations — foreign corporation may not act as city treasurer nor as depositary, nor may city lend credit to corporation.**

3. Under § 3632 of the Compiled Laws for 1913, the city treasurer is the disbursing officer of the city and charged with the disbursement of all city and special assessment funds. A foreign corporation may not act as the city treasurer, nor as a depositary of city funds (Sess. Laws of 1921, chap. 56), nor has a city any authority to lend its credit to a foreign corporation.

**Municipal corporations — attempt by holder of improvement warrants to discharge city's obligation to contractor held not to complete sale of warrants.**

4. Where municipal improvement warrants are taken by a foreign corporation and credit given the city upon its books, the attempted discharge by such corporation of a purported obligation of the city to a contractor and the charging of the same against the city's account, does not complete a sale of the warrants.

**Municipal corporations — improvement warrants, purchased with knowledge work was not completed, held subject to defenses existing in favor of municipality.**

5. Where a purported purchaser of municipal improvement warrants is shown to have agreed with the city authorities to disburse the proceeds to a contractor upon the allowance of final estimate for the work, and where the purported purchaser has knowledge of the proceedings which show that the work was never completed in accordance with the plans and specifications and the contract obligations, such purchaser holds the warrants subject to the defenses existing in favor of the municipality and arising out of the breaches of contract on the part of the contractor.

**Municipal corporations — contract for construction of sewer system held not divisible.**

6. Where a municipality enters into a contract for the construction of a sewer system consisting of sewer pipe, manholes, septic tank, sludge bed, etc., the contract is not divisible on the basis of the various units of construction,

so as to warrant a final award to the contractor based upon the completion of one or more units, while the entire contract is incomplete and unperformed.

**Municipal corporations — partial awards during progress of work limited.**

7. Under § 3710 of the Compiled Laws for 1913, partial awards during the progress of the work are limited to 85 per cent of the amount of the estimates shown to have been earned.

**Mandamus — mandamus to compel special assessment to meet warrants, major portion of which are subject to defenses, will be withheld.**

8. Where one seeks by mandamus to compel city authorities to levy a special assessment to meet the purported obligations of warrants held by him, and where the major portion of the warrants held are shown to be subject to defenses arising out of breaches of contract by the contractor, the writ of mandamus, being a discretionary remedy, should be withheld.

Opinion filed November 2, 1925.

Mandamus, 38 C. J. § 424 p. 778 n. 65. Municipal Corporations, 28 Cyc. p. 1045 n. 4; p. 1060 n. 63; p. 1562 n. 79; p. 1569 n. 70, 87; p. 1571 n. 99.

Appeal from the District Court of Richland County, *Wolfe, J.* Reversed.

*J. A. Dwyer* and *Lauder & Lauder,* for appellants.

The title to a public office cannot be tried by mandamus. Butler v. Callahan, 4 N. D. 481.

A writ of mandamus will not lie where there is any other speedy and adequate remedy. State v. Costello, 29 N. D. 215; Miller v. Stenseth, 67 N. D. 755; Mandan News v. Henke, 184 N. W. 991. State v. Burke Co. 190 N. W. 549.

A writ of mandamus is not a writ of right. Territory v. Wallace, 1 N. D. 87.

Public officers will not be compelled by mandamus to levy a tax to pay a claim until the claim has been reduced to judgment and the judgment has become final. Sawyer v. Mayhew, 10 S. D. 18, 71 N. W. 141; Diebold Safe & Lock Co. v. Gettchel, 3 N. D. 243; Oliver v. Wilson, 8 N. D. 590; Territory v. Cavanaugh, 3 Dak. 325; Wallace v. Woodbury, 1 N. D. 85.

Mandamus will not lie to control the exercise of official duties which are in their nature judicial and discretionary, but will lie to compel

the performance of purely ministerial duties. Stephens v. Jones, 123 N. W. 705. (S. D.)

City warrants are not negotiable instruments in the sense that a purchaser in good faith and before maturity takes them free of equities in the city. Gilman v. Gilby Twp. 8 N. D. 627; Erskine v. Steele Co. 4 N. D. 339; State v. Ryan, 9 N. D. 419.

Municipal corporations possess no power to incur debts, and issue negotiable instruments therefor, unless specially authorized to do so by their charter or statutes, or the power to do so can be clearly implied from some power expressly given, which cannot be fairly exercised without it. Dill. Mun. Corp. § 406. Wells v. Supervisors, 102 U. S. 400, 4 Sup. Ct. Rep. 489. Concord v. Robinson, 121 U. S. 165, 7 Sup. Ct. Rep. 937.

The city is not exempt from the common obligation to do justice which binds individuals. Such obligation rests upon all persons, whether natural or artificial. Primental v. San Francisco, 21 Cal. 352.

No relief can be granted as against the interests of any person who is not a party to the proceeding. People v. Curtis, 41 Mich. 723.

As a general rule relief will not be granted in favor of interested third persons. New Orleans v. United States, 49 Fed. 40.

Where the relator institutes the proceeding in a private capacity, and, although the city is a formal party, the public is in no way interested, no relief will be granted beyond that to which the relator himself is entitled. State v. Cleveland Electric Co. 15 Ohio C. C. 200.

The granting or withholding of a writ of mandamus rests in a measure in the discretion of the court, but that discretion may not be capriciously exercised. Where justice will be subserved by temporarily withholding the writ, and injustice might result from its immediate issue, the court will refuse to issue it until a different case can be presented. Dakota v. Wallace, 1 N. D. 85.

*Lawrence, Murphy & Nilles,* for respondent.

While courts have been vigilant in their scrutiny of corporate action, and have zealously striven to keep corporations and their agents within the limits of granted powers, they have not favored defenses to honest demands, based upon mere irregularities and informalities. Moore v. Mayer, 73 N. Y. 238, 29 Am. Rep. 134.

It matters not that the promise to pay was in a manner not authorized by law. If payments cannot be made in bonds because their issue is ultra vires, it would be sanctioning rank injustice to hold that payment need not be made at all. Such is not the law. Hitchcock v. Galveston, 96 U. S. 341, 24 L. ed. 659.

A municipality which sells its warrants or bonds and receives the money therefor, is liable to make restitution of the money if the proceedings are entirely void or to pay the warrants or bonds as they mature if the proceedings are irregular or there is some defect not going to the question of power or jurisdiction. Shepard v. Tulare Irrig. Dist. 94 Fed. 1; Haskell Co. v. National L. Ins. Co. 90 Fed. 228; Chilton v. Grattan, 82 Fed. 873; Independent School Dist. v. Rew, 55 L.R.A. 364, 49 C. C. A. 198, 111 Fed. 1; Huron v. Second Ward Sav. Bank, 49 L.R.A. 534, 30 C. C. A. 38, 86 Fed. 272; Uvalde v. Spier, 33 C. C. A. 501, 91 Fed. 594.

A municipality may be estopped by its own records to deny the validity of its obligations, and its resolutions as to the existence or performance of the conditions precedent are conclusive upon the municipality and estop it to show the contrary. 5 McQuillin, Mun. Corp. § 2312; Society for Sav. v. New London, 29 Conn. 174; Lane v. Schomp, 20 N. J. Eq. 82; Bell v. Waynesboro, 195 Pa. 299, 45 Atl. 930.

Parol evidence is of course inadmissible to explain or vary the effect of the record itself. National Bank v. Grenada, 41 Fed. 87.

The city council has the final authority on the acceptance of the work for the city. Its decision is judicial and conclusive and may not be elsewhere questioned by the city engineer or by the courts. Lux & Talbort v. Donaldson, 162 Ind. 481, 68 N. E. 1014.

BIRDZELL, J. This is a mandamus action. It is unnecessary to incorporate a statement of the facts in this opinion. It was tried upon the same record as the case of Dakota Trust Co. v. Hankinson, post, 356, 205 N. W. 990. The facts are fully stated in the report of that case and may be referred to as the statement of facts herein.

The contentions upon this appeal are: (1) That the remedy of mandamus is not available to the relator for the reason that his legal right is not clear and that, consequently, the duties of the defendants,

with respect to the levying of assessments, are not specifically enjoined as a result of their office, trust or station—that they would not be so enjoined until a judgment had been obtained establishing the rights of the relator; (2) that the judgment declaring the right of the relator to the writ is too broad in that it compels the levy of assessments to pay not merely the warrants of the relator but all warrants outstanding, while the proceeding does not purport to be brought in the interest of any person other than the relator; (3) that there was never a sale in fact to the Lincoln Trust & Savings Bank in that the price realized was never placed under the control of the city treasurer.

As to the warrants involved in the mandamus proceeding, which were not issued in payment of partial estimates and which were purchased by the relator from the Lincoln Trust & Savings Bank, we are of the opinion that the considerations found controlling in the Dakota Trust Company case are not decisive. It will be seen from the outline statement of facts that the Lincoln Trust & Savings Bank did not treat the proceeds of those warrants as a clear purchase price to which the city was entitled immediately upon delivery of the warrants to it, nor did it ever remit the same to the city treasurer. It merely took the bonds and credited the city of Hankinson on its books, to use its own language, "with the understanding that this money is to be withdrawn only in payment of estimates due John O'Connor and Company for work in connection with the sewer construction and that before money is drawn out on this account an estimate shall accompany the draft, such estimate approved by the city council and city engineer." It also appears that it disbursed $26,000 of this fund on the draft of the John O'Connor Company, or upon that draft accompanied by a short form warrant, (which warrant is not in evidence), drawn on the city treasurer and payable out of the sewer fund. In acknowledging receipt of the warrants, under date of February 14, 1922, which the relator contends were purchased by the bank, the manager of its bond department stated that they were received "through Mr. Fortune of the O'Connor Company," but later testified, by deposition, that they were delivered by the mayor, and it elsewhere appears that the mayor and Fortune were together in Minneapolis at the time of the negotiations. That there was at this time a mutual understanding that the credit in the Minneapolis bank was in reality obtained by Fortune of the O'Connor Com-

pany, rather than by the city of Hankinson, is further evidenced by a letter of the city auditor dated February 24th, in which he incloses a signature card. In this letter he speaks of the deposit "in your bank to the credit of the city of Hankinson, Hankinson, North Dakota, and deposited by Mr. Fortune of the John O'Connor Company." The signature card transmitted in this letter was the signature card of the mayor and of the city auditor, neither of whom were authorized to pay out money belonging to the city. Under the statute the *treasurer* is authorized to pay out city funds upon warrants signed by these officials. Comp. Laws, 1913, § 3632. Obviously, the only legitimate purpose the signature card could serve in the Minneapolis bank was to aid in determining the genuineness of the signatures upon city warrants for purposes other than payment. The Minneapolis bank could not serve as the city treasurer of the city of Hankinson, and there is no evidence that it ever qualified or acted, or could have legally acted, as a depositary of funds under the control of the city treasurer (Sess. Laws, 1921, chap. 56), nor evidence that it had in its files the signature card of the city treasurer. As previously stated, the Minneapolis bank did not remit for the warrants to the city treasurer. It simply placed a credit upon its books in favor of the city of Hankinson. It did not recognize the city treasurer in the transaction until almost three months afterward when, on or about May 8th, its representative appeared in Hankinson and procured his signature, after much persuasion, to a treasurer's receipt for the funds, which in fact had already been disbursed (except a small balance which was later sent to the city), so as to relieve him, the agent, of embarrassment. That the city treasurer, to whom remittance should have been made for the purchase price of these warrants, if they were in fact purchased, had not received into his custody the proceeds at the time of the payment to the O'Connor Company, is further evidenced by the fact that approximately three weeks after the sale was supposed to have been consummated a short form warrant drawn on the city treasurer in favor of the Dakota Engineering & Construction Company for $1,840.16, No. 1833, dated March 6, 1922, bears the stamp of the city treasurer on the back as follows: "Presented for payment this 7th day of March, 1922 and not paid for want of funds" and signed by the city treasurer. (Such an endorsement would entitle the holder to interest from that date (Comp. Laws,

1913, § 3633), yet the sewer district is obligated also to pay interest on all warrants previously sold ( ?) while the proceeds are still with the purchaser, thus doubling the interest charge to the city—a condition that would obviously be avoided if the proceeds were in legal custody. Hence, the necessity for the legal restrictions elsewhere referred to.) The missing O'Connor Company warrant for $26,000 which, under the testimony, was given on the same day or within a day or two of this date, is numbered 1832. Furthermore, this record does not disclose that there existed any legitimate reason for the city selling the warrants in question and paying the contractor in cash. The specifications and proposals provided that the bidding should be on the basis of cash and that the bidder should state the rate of interest at which they would be willing to take improvement warrants at par in payment and that payments "will be made in improvement warrants." In the bid the contractor agreed to accept warrants drawing seven per cent in payment and the contract stipulates for such payment. The city received no premium on the warrants in question.

In any view of this transaction we are clearly of the opinion that it can not be said that the warrants were sold by the city to the Lincoln Trust & Savings Bank for cash in pursuance of the authority found in the statute, § 3711 of the Compiled Laws for 1913. Taking the view of the transaction most favorable to the respondent, it amounts to nothing more nor less than a sale of the warrants by the city upon credit. The sale is necessarily upon credit so long as the money is not remitted to the city official who is authorized to receive money on behalf the city. To hold that this sale were completed as a cash sale by the entry of a credit upon the books of the bank in Minneapolis, would be tantamount to holding that the city could lend its credit to domestic or foreign corporations. If the city can issue warrants, taking in exchange therefor a credit upon the books of a foreign corporation, or if it could have its funds on deposit with a foreign corporation or bank without the security therefor which the statute requires, it could as well loan money directly to individuals. When the statute says a sale for cash, we think it means a sale for cash, and this cannot be consummated until the cash remittance is made to the officer charged with the disbursement of the funds. And the fact that the credit entered in favor of the city in the foreign bank is offset by a payment

53 N. Dak.—23.

which the foreign bank might have attempted to make on behalf the city, does not complete the sale. It is simply unauthorized disbursement from the city's standpoint, the treasurer of the city being the only one authorized to disburse its funds.

Altogether, we think the evidence clearly requires our finding as a fact that the city of Hankinson did not sell its improvement warrants to the Lincoln Trust & Savings Bank of Minneapolis for cash, as contemplated by the statute, § 3711, Comp. Laws, 1913, but that it issued them at the behest of the contractor who obtained the money in exchange for them from the Minneapolis bank; and the further finding that at the time the money was so paid to the contractor the bank had knowledge that the warrants had been delivered as upon the final completion and acceptance of the work.

Since, then, these warrants were not issued, under § 3710, as upon the allowance of partial estimates but in full payment, as upon the allowance of final estimate, the purchaser must take notice of the proceedings upon which they were issued. In fact it had such notice. If it be assumed (though we do not so decide) that the letter of the city engineer, dated February 28th, be properly construed as a certificate of approval of the work and as such warranted the passage by the city council of the resolution thereon which was passed, it would not follow that such would constitute the entire record of the council with reference to the completion of the work for which the warrants were authorized and that one having notice of such proceeding would be justified in looking no further in the records to determine whether or not the final payment was legally due. As the warrants were being negotiated for on the basis of their being a final payment, we think it was incumbent upon the prospective purchaser to take notice of all proceedings of the city council previously had with reference to the completion of the contract. These include the resolution passed regarding the work on the septic tank and sludge bed, which was approximately one eighth of the work in cost. The preamble of the resolution expressly recites that under the terms of the sewer contract "the final estimate shall not be awarded until the full completion and testing of the entire work," and that it is advantageous to the city of Hankinson that a *part* of the system, with the exception of the septic tank and accessories, be finally

accepted and approved; and it is therein resolved that the contract of the O'Connor Company is determined to be fully completed "with the exception of the septic tank and accessories located at the outlet of said sewer." The engineer is directed to cause the prompt completion of that part of the work yet unfinished and to make proper tests upon *its final completion,* and, *in consideration* of a bond, the final estimate is awarded. We are clearly of the opinion that this resolution defeats itself, as well as the other resolution approving the final estimate and directing the issuance of the warrants. Instead of reciting and determining that the contract is fully performed, it recites and determines that it is partially performed; but it nevertheless provides for the issuance of all of the warrants. Manifestly, if this could be done after a contract is entered into between a municipality and a contractor, a bond could be immediately substituted for full performance of the contract and all the warrants be promptly issued to the contractor in advance of the doing of any work. Such a procedure is at variance with that which is clearly contemplated by the governing statutes and the contract made in pursuance thereof. It must be held that one acquiring warrants which purport to have been issued upon the allowance of final estimate before the work is completed, necessarily holds them subject to any defense the city may have thereto arising out of nonperformance of the contract or the manner in which the work is performed.

It is suggested by counsel that, as the city itself divided the work into two units, one of which consisted of the sewer pipe and manholes within the city and the other the septic tank and sludge bed, its resolution of acceptance of the former unit should be binding upon it at the suit of the warrant holders. We think there is no merit in this contention, for the reason that the contract entered into was not thus divisible. It was an entire contract for a sewer system. Furthermore, the view taken by counsel as to the divisibility of the contract would in no event warrant the full payment to the contractor of the entire consideration including the payment for the admittedly incomplete unit.

It is also suggested that, if the resolution of the city council is not sufficient as a resolution of acceptance and approval of the completed job, it is at least sufficient as an award of a partial estimate, but this contention is likewise without merit, for the reason that the amount

awarded exceeds the amount that the city council may award upon the approval of partial estimates, the most that may be allowed upon such an award being "85 per cent of the amount shown by such estimate to have been so earned." Comp. Laws, 1913, § 3710.

Being of the opinion that all warrants owned by the petitioner, which had been acquired from the Lincoln Trust & Savings Bank in the circumstances above set forth, are subject to every defense that the city may have arising out of the failure of the contractor to complete the contract, as to such warrants petitioner is clearly not entitled to the remedy of mandamus. As to warrants in the hands of the petitioner, representing not more than one fourth of his investment and which were issued upon the approval of partial estimates, the record is not clear as to whether or not the petitioner is entitled to relief. If those warrants were acquired by the Lincoln Trust & Savings Bank after knowledge of the previous breaches of contract, they would be subject to such defense in its hands and likewise in the hands of the petitioner. At any rate, mandamus being a discretionary remedy, we think it ought not to issue in this case, since the petitioner has not shown a clear legal right. It follows that the judgment must be reversed. It is so ordered.

CHRISTIANSON, Ch. J., and BURKE, JOHNSON, and NUESSLE, JJ., concur.